Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CONSEJO DE TITULARES CONDOMINIO ESTANCIAS DE ARAGÓN POR CONDUCTO DE LA JUNTA DE DIRECTORES DEL CONDOMINIO ESTANCIAS DE ARAGÓN | KLAN202301089 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de Ponce |
| Apelante | | Civil Núm.: PO2020CV01580 |
| v. | | |
| JUAN W. HOWE HERNÁNDEZ | | Sobre: INJUNCTION PRELIMINAR; SENTENCIA DECLARATORIA; LEY DE CONDOMINIOS; DAÑOS Y PERJUICIOS |
| Apelado | | |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Marrero Guerrero

Pagán Ocasio, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de febrero de 2024.

**I.**

El 4 de diciembre de 2023, el Consejo de Titulares del Condominio Estancias de Aragón (Consejo de Titulares o parte apelante) presentó una *Apelación* ante nos en la que solicita que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, (TPI) el 15 de septiembre de 2023 y notificada y archivada en autos ese mismo día.[1] Mediante este dictamen, se desestimó una *Demanda* en reclamo de *injunction* preliminar, sentencia declaratoria, y daños y perjuicios promovida por el Consejo de Titulares en contra del señor Juan W. Howe

---

[1] Apéndice de la Apelación, Anejo XLIII, págs. 178-189.

Hernández (señor Howe Hernández o apelado).[2] Además, le ordenó a la parte apelante el pago de costas, gastos de los procedimientos y la suma de $1,000 en concepto de honorarios de abogado.

El 4 de diciembre de 2023, la parte apelante radicó una *Moción Solicitando que se Emita Resolución al Amparo de la Regla 16(E)(2) del Reglamento del Tribunal de Apelaciones de Puerto Rico.* Por medio de esta, solicitó un término de quince (15) días adicionales para presentar el apéndice del recurso de apelación.

El 6 de diciembre de 2023, emitimos una *Resolución* por la cual le concedimos a la parte apelante un término final de diez (10) días para cumplir con ello. Además, otorgamos al apelado hasta el 4 de enero de 2024 para presentar el alegato en oposición.

El 8 de diciembre de 2023, el Consejo de Titulares radicó una *Moción en Cumplimiento de Resolución al Amparo de la Regla 16 (E)(2) del Reglamento del Tribunal de Apelaciones de Puerto Rico* por la cual presentó el aludido apéndice.

El 8 de enero de 2024, el señor Howe Hernández presentó una *Moción Solicitando Prórroga* para presentar su *Alegato en Oposición.*

Mediante *Resolución,* el 9 de enero de 2024, le concedimos al apelado el término final del 19 de enero de 2024 para presentar su respectiva oposición.

El 25 de enero de 2024, el señor Howe Hernández presentó un *Alegato en Oposición y en Cumplimiento de Orden* mediante el cual planteó los mismos argumentos presentados ante el TPI; esto es, que la *Moción en Solicitud de Reconsideración y en Solicitud de Relevo de Sentencia* incumple con las Reglas 47 y 49 de Procedimiento de Procedimiento Civil, 32 LPRA Ap. V, R. 47 y R. 49; el Consejo de Titulares no ostenta legitimación activa ya que las alegaciones de la *Demanda* están relacionadas a titulares y terceros ajenos al

---

[2] Íd., Anejo II, págs. 3-32.

condominio; la parte apelante no ha acreditado el aval del Consejo de Titulares para la presentación del caso de autos; y el caso de autos es frívolo.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso, y pormenorizamos los hechos procesales atinentes a la *Apelación*.

**II.**

El caso de marras tiene su génesis el 30 de septiembre de 2020 cuando el Consejo de Titulares, por conducto de la Presidenta de la Junta de Directores, Sra. Noemí Beltrán Soto (Lcda. Beltrán), presentó la presente *Demanda* en contra del señor Howe Hernández.[3] En el mismo se alega que el 9 de mayo de 2014 el señor Howe Hernández estipuló con el señor Marcelino Molina Pérez, guardia de seguridad del condominio, lo siguiente:

> [O]frecer una disculpa al peticionario (Marcelino Molina Pérez) y al Presidente de la Junta (Dr. Luis Raúl Sánchez Peraza) del Condominio (Estancias de Aragón); **no fotografiar vehículos o titulares sin autorización**; no amenazar a empleados y presentar a la Junta cualquier queja contra estos; **actuar[á] con respeto con el personal y demás titulares**; dialogará con los empleados sólo asuntos del Condominio y seguirá los procedimientos del Condominio en todos los asuntos como titular.[4]

Sin embargo, presuntamente, el apelado incumplió este acuerdo.[5] Ante ello se alega en la *Demanda* que, el 25 de agosto de 2018, el Consejo de Titulares celebró una Asamblea Ordinaria por la cual aprobaron mediante unanimidad que la Junta de Directores realizara alguna gestión judicial para ordenar al señor Howe Hernández a cesar y desistir de "insultar, fotografiar, confrontar y acosar verbalmente a titulares, residentes, empleados y personal

---

[3] Íd., Anejo II, págs. 3-32.
[4] Íd., págs. 4-5 (Énfasis suplido), 20. Esta estipulación se pactó durante el caso **Molina v. Howe**, JAOPA2014-0173, sobre orden de protección bajo la *Ley de Acecho de Puerto Rico*, Ley Núm. 284 del 21 de agosto de 1999, 33 LPRA secs. 4013 *et seq.*
[5] Íd., pág. 5.

voluntariado o con paga y sus pertenencias".[6] El Consejo de Titulares indicó que aunque se le notificó al apelado esta aprobación, el señor Howe Hernández continuó con dichos actos, por lo cual, el 6 de mayo de 2019 la Junta de Directores comenzó los trámites relacionados al proceso de cese y desista en contra del señor Howe Hernández.[7] Además, según alega el Consejo de Titulares, el apelado también "[i]nsult[ó], confront[ó] y acos[ó] y provey[ó] información falsa y sin fundamento tanto de manera personal radicando escritos en diferentes foros (donde no le han dado la razón) o por medio de la prensa escita, radial y televisiva".[8] De hecho, a la *Demanda* se le anejó una declaración jurada suscrita por la Lcda. Beltrán, mediante la cual detallan otros eventos que también dieron origen al caso de epígrafe.[9] En lo que concierne al caso de autos, para el 7 de agosto de 2020, el apelado **subió a un "chat" fotos** de un Guardia de Seguridad, señor Lisandro Medina; del Tesorero del Consejo de Titulares, Dr. Luis Raúl Sánchez Peraza ("Dr. Sánchez Peraza"); **de un vehículo jeep perteneciente a un titular**, Dr. Kenneth Rivera; **de un titular**, señor Roberto Rodríguez; y alegadamente realizó imputaciones falsas sobre otra titular, Sra. Sara Cruz.[10] Además, el 15 de septiembre de 2020, el señor Howe Hernández **tomó fotos a los vehículos de la Lcda. Beltrán y de un titular sin autorización**.[11] Consecuentemente, mediante la presente *Demanda*, el Consejo de Titulares, solicitó una vista de *injunction* preliminar, a tenor con la Regla 56 de Procedimiento Civil, *supra*, R. 56,[12] y una *Sentencia Declaratoria* ordenando al apelado a cesar y desistir de:

> [F]otografiar vehículos o titulares sin autorización; no amenazar a empleados y presentar a

---

[6] Íd., págs. 5, 23.
[7] Íd., págs.5, 27.
[8] Íd., pág. 5.
[9] Íd., págs. 16-19.
[10] Íd., pág. 6.
[11] Íd., págs. 8, 29-30.
[12] Íd., págs. 13-14.

la Junta cualquier queja contra estos; **actuar con respe[c]to con el personal y demás titulares**; no hacer expresiones públicas difamatorias en contra de los miembros de la Junta de Directores, los titulares, empleados ni el Consejo de Titulares; dialogar con los empleados sólo asuntos del Condominio; dialogar con los empleados sólo asuntos del Condominio y seguir los procedimientos del Condominio en todos los asuntos como titular, incluyendo no impedirla celebración de Asambleas debidamente convocadas **para el bien del Condominio y acorde la Ley de Condominios**. . . .[13]

El 15 de octubre de 2020, el señor Howe Hernández presentó una *Solicitud de Desestimación*.[14] En esta arguyó que la *Demanda* es improcedente por falta de legitimación activa, y falta de jurisdicción sobre la materia y la persona del Consejo de Titulares; la *Demanda* deja de exponer una reclamación que justifique la concesión de un remedio, conforme a la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2; y la parte apelante no agotó todos los remedios internos provistos por la *Ley de Condominios de Puerto Rico*, Ley Núm. 129 del 16 de agosto de 2020, 31 LPRA sec. 1921 *et seq.* (Ley de Condominios o Ley Núm. 129-2020), y el Reglamento del Condominio.[15] Además, el apelado arguyó que los remedios solicitados coartaban su derecho a la libre expresión contrario a la Sección 4 del Artículo II de la Constitución de Puerto Rico, Art. II, Sec. 4, Const. ELA, LPRA, Tomo 1, y jurisprudencia aplicable. Ante ello, solicitó se desestimara la reclamación presentada en su contra.

El 16 de octubre de 2020, el señor Howe presentó una *Moción Complementaria a "Solicitud de Desestimación" en Torno al Deber del Tribunal de Resolver con Preferencia Cuestiones Relativas a Jurisdicción* reiterando sus anteriores planteamientos, y alegando que los tribunales deben atender el asunto relativo a la jurisdicción con preferencia. [16]

---

[13] Íd., págs. 13-14. (Énfasis suplido).
[14] Íd., Anejo VI, págs. 41-56.
[15] Íd., págs. 41-43. La parte apelante no incluyó el reglamento del condominio.
[16] Íd., Anejo VII, págs. 57-61.

El 20 de octubre de 2020, la parte apelante presentó un *Moción en Cumplimiento de Orden y en Oposición a Solicitud de Desestimación.*[17] En esta destacó que, conforme a los Artículos 48 y 54 de la Ley Núm. 129-2020, *supra*, sec. 1922t, 1922z, el Consejo de Titulares ostenta personalidad jurídica propia, y será representando por su Presidente en los foros pertinentes.[18] Además, alegó que el Artículo 39 (b)(2) de la Ley de Condominios, Íd., sec. 1922k, concede al Consejo de Titulares legitimación activa, pues de esta disposición nace el derecho de presentar causas de acción de recursos interdictales "contra aquellos que cometan infracciones a las reglas establecidas en esta Ley".[19] También, la parte apelante niega haber violado el derecho del apelado a la libre expresión, y arguye en cambio que, mediante los remedios aquí solicitados, pide que se le ordene al señor Howe Hernández a actuar conforme a la Ley de Condominios y el Reglamento del condominio "en [a]ras de que haya una sana convivencia en el Condominio", a tenor con el Artículo 2 de la Ley de Condominios, 1921a.[20]

El 4 de mayo de 2021, el señor Howe Hernández presentó una *Reiteración a Solicitud de Desestimación y en Torno al Deber del Tribunal en Resolver con Preferencia Cuestiones Relativas a Jurisdicción* arguyendo nuevamente que el Consejo de Titulares no tiene legitimación activa; la *Demanda* no contiene reclamación suficiente para la consignación de un remedio; y el Consejo no ha agotado los remedios provistos por la Ley de Condominios, *supra*, y el Reglamento del Condominio. Por lo tanto, solicitó la desestimación del pleito de autos.[21]

---

[17] Íd., Anejo IX, págs. 63-77.
[18] Íd., pág. 64.
[19] Íd.
[20] Íd., pág. 66; El Reglamento no fue incluido en el apéndice del recurso de apelación.
[21] Íd., Anejo XXVII, págs. 127-145.

El TPI emitió una *Sentencia Parcial* el 2 de agosto de 2023, notificada el 3 de agosto de 2023,[22] por la cual declaró *ha lugar* la *Moción Solicitando Remedio sobre Desestimación Pendiente* presentada el 13 de julio de 2023 por el apelado,[23] y, por ende, se le autorizó el desistimiento, sin perjuicio, solamente respecto a la reclamación por daños y perjuicios.

Tras varias inhibiciones y conflictos en los calendarios del tribunal, así como de los abogados de las partes,[24] el 15 de septiembre de 2023, el TPI notificó una *Sentencia* por la cual resolvió *ha lugar* la *Solicitud de Desestimación* presentada originalmente el **15 de octubre de 2020** por el apelado,[25] y, por ende, desestimó la *Demanda* del caso de autos sin perjuicio.

Posteriormente, el Consejo de Titulares presentó una *Moción en Solicitud de Reconsideración y en Solicitud de Relevo de Sentencia.*[26] No obstante, la misma fue denegada mediante *Resolución* dictada el 2 de noviembre de 2023 y notificada ese mismo

---

[22] Íd., Anejo XLI, pág. 176.

[23] Íd., Anejo XXXIX, págs. 173-174. El TPI hizo referencia a la solicitud de desestimación, cuando debió haber aludido a la *Moción Solicitando Dicte Sentencia Parcial de Archivo e Imposición de Sanciones*. Mediante este recurso la parte apelante solicitó el desistimiento de la causa de acción de daños y perjuicios. Íd., Anejo XXXVIII, págs. 171-172.

[24] Íd., Anejo XII, págs. 83-96 (**comienza vista de *injunction* preliminar** donde se completó el directo y se comenzó con el contrainterrogatorio de la Lcda. Beltrán Soto; **se señaló continuación de juicio** en su fondo); Íd., Anejo XIII, págs. 97-103 (apelado presenta ***Solicitud de Recusación e Inhibición bajo la Regla 63 de Procedimiento Civil y Solicitud para* Dejar *sin Efecto Señalamiento del 11 de diciembre de 2020***); Íd., Anejo XIV, págs. 104-105 (***Resolución* de inhibición** de la Hon. Itzel Marie Aguilar Pérez); Íd., Anejo XVI, págs. 107-108 (**re-señalamiento** de vista de *injunction* preliminar por conflicto con el calendario del tribunal); Íd., Anejo XVII, págs. 109-111 (**solicitud para recalendarizar** vista de *injunction* preliminar por **conflicto con el calendario** de la representación legal de la parte apelante); Íd., Anejo XIX, págs. 113 (**se recalendariza** vista de *injunction* preliminar); Íd., Anejo XX, pág. 114 (tribunal *motu proprio* **recalendariza** vista de continuación de *injunction* preliminar); Íd., Anejo XXI, pág. 115 (***Resolución* de inhibición** *motu proprio* del Hon. Hammed Santaella Carlo); Íd., Anejo XXII, págs. 116-117 (**solicitud de recalendarización** de vista por conflicto con el calendario de la representación legal de la parte apelante); Íd., Anejo XXIII, págs. 118-119 (***Resolución* de inhibición** *motu proprio* del Hon. Juez Jorge Rafael Rivera Rueda); Íd., Anejo XXVI, págs. 122-126 (**vista fue convertida a una sobre el estado de los procedimientos** al tratarse de una adquisición del caso reciente ante las inhibiciones de otros jueces); Íd., Anejo XXVIII, pág. 146 (tribunal *motu proprio* **deja sin efecto el juicio** en su fondo); Íd., Anejo XXXII, págs. 152-159 (se dejó sin efecto el señalamiento); Íd., Anejo XXXVI, pág. 168 (se señala continuación de la **conferencia con antelación a juicio**); Íd., Anejo XXXVII, págs. 169-170 (se señala vista transaccional); Íd., Anejo XL, pág.175 (***Resolución* de inhibición** *motu proprio* del Hon. Francisco J. Rosado Colomer).

[25] Íd., Anejo VI, págs. 41-56.

[26] Íd., Anejo XLIV, págs. 190-207.

día.[27] Lo anterior, luego de que, el apelado presentara su *Moción Mostrando Causa en Oposición a "Reconsideración" y Relevo de Sentencia* el 30 de octubre de 2023.[28]

En desacuerdo con el referido dictamen, el 4 de diciembre de 2023, el Consejo de Titulares acude ante este foro mediante recurso de apelación y formuló los siguientes señalamientos de error:

> Erró el TPI de Ponce al declarar no ha lugar la Reconsideración radicada por el apelante en violación del debido procedimiento de ley.

> Erró el TPI de Ponce al dictar Sentencia desestimando el caso de marras aduciendo falta de legitimación del apelante en un caso bajo la Ley de Condominios (Ley Núm. 129-2020).

> Erró el TPI de Ponce al imponerle honorarios por temeridad al apelante, por la dilación causada en el caso imputada al apelante.

Ese mismo día, la parte apelante también presentó una *Moción Solicitando que se Emita Resolución al Amparo de la Regla 16(E)(2) del Reglamento del Tribunal de Apelaciones de Puerto Rico* para presentar el apéndice del recurso de apelación dentro de un término de quince (15) días adicionales.

En vista de ello, el 6 de diciembre de 2023, emitimos una *Resolución* en la que le concedimos a la parte apelante un término final de diez (10) días para presentar el apéndice. Además, otorgamos al apelado hasta el 4 de enero de 2024 para presentar el alegato en oposición.

El 8 de diciembre de 2023, el Consejo de Titulares radicó una *Moción en Cumplimiento de Resolución al Amparo de la Regla 16 (E)(2) del Reglamento del Tribunal de Apelaciones de Puerto Rico* por la cual presentó el aludido apéndice.

El 8 de enero de 2024, el señor Howe Hernández presentó una *Moción Solicitando Prórroga* para presentar su *Alegato en Oposición.*

---

[27] Íd., Anejo I, pág. 1.
[28] Íd., Anejo XLVI, págs. 209-220.

Mediante *Resolución*, el 9 de enero de 2024, le concedimos al apelado el término final hasta el 19 de enero de 2024 para presentar su respectiva oposición.

El 25 de enero de 2024, el señor Howe Hernández presentó un *Alegato en Oposición y en Cumplimiento de Orden* mediante el cual planteó los mismos argumentos ante el TPI; esto es, que la *Moción en Solicitud de Reconsideración y en Solicitud de Relevo de Sentencia* incumple con las Reglas 47 y 49 de Procedimiento de Procedimiento Civil, *supra*, R. 47 y R. 49; el Consejo de Titulares no ostenta legitimación activa ya que las alegaciones de la *Demanda* están relacionadas a titulares y terceros ajenos al condominio; la parte apelante no ha acreditado el aval del Consejo de Titulares para la presentación del caso de autos; y el caso de autos es frívolo.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. Además, tras un análisis objetivo, sereno y cuidadoso de la totalidad del expediente, pormenorizamos las normas jurídicas, máximas y doctrinas aplicables al caso de autos.

**III.**

**A.**

En nuestra jurisdicción, los condominios sometidos al Régimen de Propiedad Horizontal están sujetos a la Ley Núm. 129-2020, *supra*, mejor conocida como la *Ley de Condominios de Puerto Rico*, anteriormente *Ley de Condominios*, Ley Núm. 104 del 23 de junio de 1958, 31 LPRA sec. 1291 *et seq.* (*derogada*). En lo que concierne a los condominios sujetos a este régimen previo a la creación de la Ley Núm. 129-2020, *supra*, se regirán por las disposiciones incluidas en este estatuto, "irrespectivo de la fecha en que fuera sometido a dicho régimen". Íd.

Uno de los principios fundamentales de la Ley de Condominios es facilitar la vida en convivencia y "garantizar a cada

titular el pleno disfrute de su propiedad". ***Consejo de Titulares v. Ramos Vázquez***, 186 DPR 311 (2012) (citando a M.J. Godreau Robles, *La Nueva Ley de Condominios: Guía básica para entender el Régimen de Propiedad Horizontal según la Ley 103 del 5 de abril de 2003*, San Juan, Ed. Dictum, 2003, pág. 19); ***Pérez Riera v. Con. Tit. Cond. Marymar***, 197 DPR 197, 204-205 (2017). Cónsono con ello, nuestro más alto foro resolvió:

> Desde sus inicios, "**[l]a aprobación de la Ley de la Propiedad Horizontal adelantó el propósito de armonizar el disfrute de cada apartamento por su titular y las limitaciones a ese disfrute <u>en interés de la colectividad</u>**". D.A.Co. v. Junta Cond. Sandy Hills, 169 D.P.R. 586, 597 (2006). En otras palabras, subyace en estos preceptos la necesidad imperiosa de crear "unas reglas mínimas para el uso y disfrute de cada apartamento" **que "facilit[en] la convivencia entre los titulares de un inmueble, sin que se intervenga indebidamente con los derechos individuales de los demás**". Junta Dir. Cond. Montebello v. Torres, 138 D.P.R. 150, 154 (1995).
>
> ***Batista, Nobbe v. JTA. Directores***, 185 DPR 206, 218 (2012). (Énfasis suplido y subrayado).

En otras palabras, el dominio que ejerce un titular sobre su propiedad **está supeditado a los derechos de los demás titulares** y su "derecho de propiedad sobre su apartamiento tiene que ejercerse dentro del marco de convivencia y el respeto al derecho ajeno". Ley de Condominios, *supra*, sec. 1921a. Precisamente, para asegurar una convivencia y el mejor servicio común del condominio, la Ley de Condominios, Íd., dispone de dos (2) figuras cruciales cuyo rol se centra en la administración del inmueble sujeto al Régimen de Propiedad Horizontal; estos son: el Consejo de Titulares y la Junta de Directores.

El Consejo de Titulares es la autoridad suprema del inmueble y goza de personalidad jurídica propia. Ley de Condominios, sec. 1921b; sec.1922t. Véase, además, ***Pérez Riera v. Con. Tit. Cond. Marymar***, supra, en la pág. 204; ***Consejo de Titulares v. Ramos Vázquez***, supra, en la pág. 326. Es así como, mediante "su

existencia hace viable la administración de las áreas comunes del inmueble por todos los titulares" protegiendo así los intereses de estos frente a la comunidad a terceros. ***Consejo de Titulares v. Ramos Vázquez***, supra, en la pág. 326; véase, además, ***Bravman, González v. Consejo Titulares***, 183 DPR 827, 825 (2011)) (Énfasis suplido). Cónsono con ello, entre sus funciones, se encuentra "[i]ntervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, como **tomar aquellas medidas necesarias y convenientes para el mejor servicio común",** incluyendo cumplir y hacer cumplir la Ley Núm. 129-2020, *supra*, el Reglamento del inmueble, la escritura matriz y los acuerdos del Consejo de Titulares. Ley de Condominios, *supra*, sec. 1922u; sec. 1922y; véase, además, ***Consejo de Titulares v. Ramos Vázquez***, supra, págs. 326-327.

Por otra parte, la Junta de Directores se compone de aquellos Directores electos por el Consejo de Titulares, y su Presidente(a) ostenta la autoridad de representar a la comunidad en los foros pertinentes en los asuntos que la afecten. Ley de Condominios, *supra*,1922z; ***D.A.C.O. v. Junta Cond. Sandy Hills***, supra, pág. 595. Según fue establecido en el caso de ***Consejo Tit. V. Galerías Ponceñas, Inc.***, 145 DPR 315, 332 (1998), el(la) Presidente(a) posee la autoridad para acudir al tribunal y reclamar el cumplimiento de la Ley de Condominios o Propiedad Horizontal "**sin necesidad de obtener previamente el aval del Consejo de Titulares**, siempre que la acción esté relacionada con facultades que le fueron expresamente delegadas por la ley". ***D.A.C.O. v. Junta Cond. Sandy Hills***, supra, 595. (Énfasis suplido). Entre sus funciones, la Junta de Directores posee la facultad de "a) [a]tender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos

efectos las oportunas advertencias y apercibimientos a los titulares". Ley de Condominios, *supra*, sec. 1922y.

Según se indica en el Artículo 2 de la Ley Núm. 129-2020, *supra*, sec. 1921a, el dominio ejercido por un titular sobre su propiedad está limitado a los derechos de los demás y por ello, debe ejercerse dentro del marco de convivencia y el respeto al derecho ajeno. Por ello, en su Artículo 39 se detalla lo siguiente respecto al uso y disfrute de cada apartamento:

> El uso y disfrute de cada apartamento estará sometido a las reglas siguientes:
>
> . . . .
>
> b) **La infracción de estos principios o la de las reglas enumeradas en los incisos subsiguientes dará lugar** al ejercicio de la acción de daños y perjuicios por aquel titular u ocupante que resulte afectado, además de cualquier otra acción que corresponda en derecho, incluidos los interdictos, las dispuestas en la Ley Núm. 140 de 23 de julio de 1974, según enmendada, conocida como, "Ley Sobre Controversias y Estados Provisionales de Derecho", y cualquier otro remedio en equidad. **La Junta de Directores queda expresamente autorizada a presentar acciones interdictales a nombre del Consejo de Titulares contra aquellos que cometan infracciones a las reglas establecidas en esta Ley.**
>
> . . . .
>
> 2) **Ningún ocupante del apartamento producirá ruidos o molestias ni ejecutará actos que perturben la tranquilidad de los demás titulares o vecinos.**
>
> . . . . Id., sec. 1922k (Énfasis suplido); véase, además, *Consejo Titulares v. Ramos Vázquez*, supra, págs. 325-326.

En otras palabras, esta disposición "establece categóricamente, entre otras exigencias y prohibiciones, que todo titular tiene el deber de cumplir estrictamente con todas las disposiciones de administración que se consignan en la Ley de Condominios, en la escritura o en el reglamento del condominio". *Consejo de Titulares v. Ramos Vázquez*, supra, pág. 325.

Ahora, es eminente resaltar que, si bien la Ley 104 del 23 de junio de 1958, *supra*, fue enmendada posteriormente y luego

sustituida por la Ley Núm. 129-2020, *supra*, el texto del Artículo 39 de la Ley Núm. 129-2020, Íd., sec. 1922k- anteriormente el Artículo 15 de la Ley Núm. 104 del 25 de junio de 1958, *supra*, sec. 1291m- permanece intacto. En otras palabras, la intención del legislador ha sido la misma por 60 años; a saber, que las molestias y actos que perturben la tranquilidad de los demás titulares y vecinos darán paso a la presentación de interdictos por parte de la Junta de Directores para el cumplimiento con las disposiciones vertidas en la ley, específicamente para el acatamiento con el deber ineludible de respetar el derecho de los demás titulares al disfrute de sus propiedades dentro de un marco de convivencia. Ley Núm. 129-2020, *supra*, 1922k; Ley Núm. 104 del 25 de junio de 1958, *supra*, sec. 1291m. Es por ello que se les exige a los titulares "obrar según los principios de buena fe y equidad, ya sea en el quehacer administrativo o privado. Ello para "**viabilizar el máximo disfrute de la propiedad privada y el aprovechamiento del uso y disfrute de los elementos que componen el régimen**". *Consejo de Titulares v. Ramos Vázquez*, supra, pág. 327 (citando a ***Bravman, González v. Consejo Titulares***, supra, pág. 825)). (Énfasis suplido).

Por lo tanto, con un texto claro como el del Artículo 39 de la Ley Núm. 129-2020, *supra*, sec. 1922k, no hay apertura para interpretación. Nuestro más alto foro ha hecho énfasis en su facultad para interpretar la ley "en bús[queda] de un sentido armonioso, el lenguaje claro y explícito de ésta no debe ser tergiversado, malinterpretado ni sustituido". ***Puerto Rico Fast Ferries, LLC v. Autoridad de Alianzas Público-Privadas***, 2023 TSPR 121. Por ende, solo debe suplir la ley cuando existen deficiencias y sea necesario, pues "no p[uede] usurpar la función de legislar de la Asamblea Legislativa". Íd. Más importante aún, "**cuando el lenguaje de una ley es claro, los tribunales venimos obligados a respetar la voluntad legislativa**". Íd. (Énfasis suplido);

*González Meléndez v. Municipio Autónomo de San Juan*, 2023 TSPR 95; *San Gerónimo Caribe Project v. Registradora*, 189 DPR 849 (2013).

**B.**

El *injunction* o interdicto es un recurso por el cual se le requiere a la persona "absten[erse] de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra". Código de Enjuiciamiento Civil, Artículo 675, 32 LPRA sec. 3521; *Next Step Medical v. Bromedicon*, supra, págs. 485-486. La razón fundamental para su concesión es la existencia de una amenaza real de sufrir algún menoscabo para el cual no existe un remedio adecuado en la ley". Id., pág. 486.

Según nuestro sistema jurídico, existen tres (3) tipos de recursos de *injunction*; estos son: entredicho provisional, *injunction* preliminar e *injunction* permanente. Id., Regla 57 de Procedimiento Civil, *supra*, R. 57. El *injunction* preliminar es un recurso emitido por el tribunal previo a la celebración del juicio en su fondo, y usualmente, luego de la celebración de una vista "en donde las partes tienen la oportunidad de presentar prueba en apoyo y oposición a su expedición". *Next Step Medical v. Bromedicon*, supra, págs. 486. Su función primordial es mantener el *status quo* o estado actual de las cosas en lo que se celebre el juicio y para prevenir que el demandado no promueva con su conducta una situación que convierta en académica la determinación que finalmente tome el tribunal. Íd. Específicamente para evitar que "se causen perjuicios inminentes o menoscabos irreparables a alguna persona durante la pendencia del litigio". Íd., pág. 486. Es por ello que se debe expedir de forma expedita y solamente ante una "clara e inequívoca violación de un derecho". Íd., pág. 487. Para su expedición o denegación es meritorio evaluar sus requisitos:

(1) la naturaleza de los daños que puedan ocasionársele a las partes de concederse o denegarse el recurso; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que eventualmente la parte promovente prevalezca al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederse el injunction, y (5) el posible impacto sobre el interés público del remedio que se solicita. Id., pág. 487; véase, además, Regla 57.3 de Procedimiento Civil, *supra*, Regla 57.3; **VDE Corporation v. F&R Contractors**, 180 DPR 21, 40-41 (2010); **Next Step Medical v. Biomet, Inc.**, 195 DPR 739, 751 (2016).

También será crucial la diligencia y buena fe con la cual obre la parte peticionaria. **Next Step Medical v. Bromedicon**, supra, 487. Sin embargo, los requisitos previos no son absolutos, sino directorios. Íd. Además, la concesión del interdicto es discrecional, por lo cual, la determinación del TPI no debe ser revocada, al menos que se demuestre abusó de discreción. Íd. pág. 487.

Por otra parte, nuestro ordenamiento jurídico reconoce los *injunctions* estatutarios. Estos son distintos e independientes a los interdictos tradicionales. Una distinción importante entre estos dos remedios es que, "el *injunction* clásico se rige por la Regla 57.3 de Procedimiento Civil, *supra*, R. 57.3, y las disposiciones correspondientes del Código de Enjuiciamiento Civil, 32 LPRA sec. 3521 *et seq.*, mientras que el interdicto estatutario proviene de un mandato legislativo expreso". **Next Step Medical v. Biomet**, supra, 751. Consecuentemente, los interdictos estatutarios están "generalmente exento[s] de la normativa aplicable a este último", ya que los requisitos del *injunction* tradicional son más rigorosos. **Next Step Medical v. Bromedicon**, supra, 497; **CBS Outdoor v. Billboard One, Inc.**, 179 DPR 391, 409 (2010). Por lo tanto, "la concesión de un *injunction* estatutario requiere un tratamiento especial, enmarcado en un examen o escrutinio judicial más acotado", tal como es el caso del interdicto provisto por la Ley de Condominios, *supra*. **Next Step Medical v. Bromedicon**, supra, 497.

En lo que concierne al caso de marras, el Artículo 39 de la Ley 129-2020, *supra*, sec. 1922k, expresamente autoriza a la Junta de Directores a presentar interdictos "contra aquellos que cometan infracciones a las reglas establecidas en esta Ley", y procede a detallar varias circunstancias por las cuales procedería la concesión del *injunction* estatutario:

> **1)** Cada apartamento se dedicará únicamente al uso dispuesto para el mismo en la escritura a que se refiere el Artículo 4 de esta Ley.
> **2)** Ningún ocupante del apartamento producirá ruidos o molestias ni ejecutará actos que perturben la tranquilidad de los demás titulares o vecinos.
> **3)** Los apartamentos no se usarán para fines contrarios a la ley, a la moral, orden público y a las buenas costumbres.
> **4)** Cada titular deberá ejecutar a sus únicas expensas las obras de modificación, reparación, limpieza, seguridad y mejoras de su apartamento, sin perturbar el uso y goce legítimo de los demás. Será deber ineludible de cada titular realizar las obras de reparación
> y seguridad, tan pronto sean necesarias para que no se afecte la seguridad del inmueble ni su buena apariencia. Todo titular u ocupante de un apartamento vendrá obligado a permitir en su apartamento las reparaciones o trabajos de mantenimiento que exija el inmueble, permitiendo la entrada al apartamento para su realización. Íd.

**C.**

Para la intervención en un caso es indispensable que el mismo sea justiciable. ***Torres Montalvo v. Gobernador ELA***, 194 DPR 760, 766 (2016); véase, además, ***ELA v. Aguayo***, 80 DPR 552 (1958). Lo anterior "requiere que exista una controversia genuina, entre partes antagónicas, que permita adjudicarla en sus méritos y conceder un remedio con efecto real sobre la relación jurídica". ***Torres Montalvo v. Gobernador ELA***, supra, pág. 766; véase, además, ***Asoc. Fotoperiodistas v. Rivera Schatz***, 180 DPR 920 (2011); ***Amadeo Ocasio v. Pierluisi Urrutia***, 211 DPR 278, 284 (2023); ***Hernández Santa v. Srio. De Hacienda***, 208 DPR 727, 738 (2022). Asimismo, será necesario que las partes ostenten legitimación activa, la cual consiste en la "capacidad para realizar eficazmente actos procesales, demandar, y la tenencia de un interés legítimo en la controversia".

*Amadeo Ocasio v. Pierluisi Urrutia*, supra, págs. 284-285; véase, además, *Pérez Rodríguez v. López Rodriguez et al.*, 210 DPR 163, 178 (2022); *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019). Para determinar si una parte posee legitimación activa, se deben evaluar estos cuatro (4) requisitos:

> (1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso, y no abstracto o hipotético; (3) que existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) que la causa de acción surge bajo el palio de la Constitución o de una ley. *Torres Montalvo v. Gobernador ELA*, supra, pág. 767 (citando a *Hernández Torres v. Gobernador*, 129 DPR 824, 836 (1992)); véase, además, *Ramos, Méndez v. García García*, *supra*, 394-395.

Igualmente, el interés de la parte deberá ser "especial y particularizado". *Torres Montalvo v. Gobernador ELA*, supra, pág. 767; véase, además, *Col. Ópticos de PR v. Vani Visual Center*, 124 DPR 559 (1989).

Otro factor para determinar si un caso es justiciable, es la norma de academicidad. El fin primordial de esta doctrina es "evitar el uso inadecuado de los recursos judiciales y evitar precedentes innecesarios". *Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico*, 206 DPR 803, 815-816 (2021); *Moreno v. U.P.R. II*, 178 DPR 969, 974-975 (2010); *P.N.P. v. Carrasquillo*, 166 DPR 70, 75 (2005). Según ha establecido nuestro más alto foro, un caso es académico cuando "se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que éste haya sido reclamado o una sentencia sobre un asunto, que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente". *Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico*, supra, pág. 816; *Asoc. Fotoperiodistas v. Rivera Shatz*, supra, pág. 932; *Moreno v. U.P.R. II*, supra, pág. 973. De la misma forma, un caso puede tornarse académico por cambios en los

hechos judiciales o fácticos que surgen, durante el transcurso del caso. ***Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico***, supra, pág. 816; ***Anguiera v. J.L.B.P.***, 150 DPR 10, 19 (2000). Si en efecto un caso se convierte en académico, el tribunal debe abstenerse de considerarlo en los méritos. ***Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico***, supra, pág. 816; ***Amadeo Ocasio v. Pierluisi Urrutia***, supra, pág. 287.

**D.**

Por otro lado, la Regla 44 de Procedimiento Civil, *supra*, R. 44, permite conceder costas, honorarios de abogado e interés legal. Además, le permite evaluar si una parte ha actuado con temeridad. La temeridad consiste en aquellas "actuaciones en que un litigante promueve un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos". ***Mena Pamias v. Jiménez Meléndez***, 2023 TSPR 108; véase, además, ***SLG González Figueroa v. SLG et al.***, 209 DPR 138, 147 (2022). Su concesión, no obstante, recae en la sana discreción del TPI. ***Mena Pamias v. Jiménez Meléndez***, supra, pág. 14; véase, además, ***SLG González Figueroa v. SLG et al.***, supra, pág. 150; ***VS PR, LLC v. Drift-Wind, Inc.***, 207 DPR 253, 277 (2021); ***Torres Vélez v. Soto Hernández***, 189 DPR 972, 993 (2013). Por ello, los foros apelativos solo debemos intervenir con dicha determinación cuando "surja claramente un abuso de discreción". ***Mena Pamias v. Jiménez Meléndez***, supra, pág. 14.

Según dispone la Regla 44.1 (d) de Procedimiento Civil, *supra*, los honorarios de abogado se impondrán cuando "cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el

pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspond[a] a tal conducta". Como mencionado anteriormente, la normal general es que la determinación sobre la existencia de temeridad recae en la discreción del TPI. ***VS PR, LLC v. Drift-Wind, Inc.***, supra, pág. 276; véase, además, ***Torres Vélez v. Soto Hernández***, supra, pág. 993. Sin embargo, nuestro más alto foro ha reiterado que no procede la concesión de estos honorarios cuando "lo que se enuncia ante el tribunal son controversias complejas y novedosas que no han sido resueltas; cuando se actúa acorde con una apreciación errónea del derecho y no hay precedentes establecidos sobre el asunto, **o cuando existe alguna discrepancia genuina en cuanto a quién favorece el derecho aplicable**". ***VS PR, LLC v. Drift-Wind, Inc.***, supra, 277; véase, además, ***Torres Vélez v. Soto Hernández***, supra, págs. 993-994; ***Santiago v. Sup. Grande***, 166 DPR 796, 821 (2006).

Distinto es la concesión de costas, las cuales se concederán "a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas". Regla 44.1 (a) de Procedimiento Civil, *supra*, R. 44.1 (a). Las costas serán aquellos "gastos en que se incurra necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra". Íd.

Otro tipo de imposición posible son los intereses legales por temeridad. Regla 44.3 de Procedimiento Civil, *supra*, R. 44.3; ***González Ramos v. Pacheco Romero***, 209 DPR 138, 151 (2022). Para ello, es indispensable una determinación de temeridad y debe tratarse de una acción de cobro de dinero o daños y perjuicios. ***González Ramos v. Pacheco Romero***, supra, pág. 151. Si se

cumplen estos requisitos, la imposición de intereses legales será obligatoria. Íd.

**IV.**

En el caso ante nos, el TPI dictó una *Sentencia* en la que desestimó la *Demanda* del caso de marras, luego de haber comenzado la visa de *injunction* estatutario y casi tres (3) años después de presentada la *Moción de Desestimación*, y ordenó a la parte apelante a pagar el pago de costas y gastos de procedimientos, y la suma de $1,000 en concepto de honorario de abogados. El foro primario realizó tal desestimación al concluir que la parte apelante no posee legitimación activa para continuar el trámite de la sentencia declaratoria, a tenor con la Ley Núm. 129-2020, *supra*, y el *injunction* es académico.[29] En lo pertinente concluyó que:

> En el caso de autos. . . . Nótese que **la acción de *injunction* se volvió académica**. . . .
>
> A nuestro entender, las reclamaciones de la demanda **no son asuntos de interés común, por lo que no caen dentro de las facultades, prerrogativas ni deberes del Consejo de Titulares.** El Consejo hace referencia a alegadas expresiones difamatorias, toma de fotografías por parte del demandado a titulares y empleados del Condominio, solicitud de documentación por correo electrónico ante la Junta, eventos suscitados con terceras personas no titulares en y fuera de las inmediaciones del Condominio, entre otras. **Ciertamente, se trata de una controversia entre particulares por asuntos, incluso, de índole de libertad de expresión.** Nada impide que los titulares afectados, en su capacidad individual, hagan uso de otros mecanismos administrativos y legales para encauzar sus reclamos si así fuere necesario tal como dispone el Art. 39 de la Ley Núm.129-2020, 31 LPRA sec. 1922k.
>
> Como ya mencionamos, las causas de acción que corresponden al Consejo de Titulares tienen que girar en torno al mejor servicio común, problemas comunales, el menoscabo de áreas comunes, las medidas adoptadas para el mejor funcionamiento del condominio y daños al patrimonio del Consejo. <u>Bravman González v. Consejo de Titulares del Cond. Palma Real</u>, supra, pág. 850; <u>Consejo Tit. y. Galerías Poncenas, Inc.</u>, 145 DPR 315 (1998). De este modo, nuestro más alto foro ha reconocido que el Consejo

---

[29] Anejo XLIII, pág. 188. El TPI no fundamentó ni explicó su determinación de academicidad.

"*existe como persona jurídica independiente cuando actúa en función del fin común perseguido*". <u>Hernández Pérez v. Halvorsen</u>, 176 DPR 344, 363 (2009). Sin embargo, "*el hecho de que el Consejo de Titulares posea capacidad jurídica no le faculta para comparecer como demandante o demandado en cualquier procedimiento judicial que involucre a algún titular del condominio o que se relacione de alguna forma con éste*". Íd.[30] (Énfasis suplido y subrayado en el original)

En cuanto a la imposición de honorarios de abogados, costas e intereses legales, el TPI resolvió que el Consejo de Titulares tuvo "el evidente propósito de impedir una resolución razonablemente rápida de la controversia, ocupando innecesariamente la atención del foro judicial, por alrededor de casi tres (3) años".[31] Además, dicha determinación tomó en consideración que "del expediente electrónico, el Tribunal le concedió varias oportunidades al Consejo de Titulares para examinar sus alegaciones y dialogar sobre una posible transacción".[32] Adviértase que ya el propio Tribunal resolvió que el Consejo de Titulares posee legitimación activa para presentar este caso. Dicha determinación está contenida en la *Minuta* de la vista celebrada el 9 de enero de 2023, más no fue firmada por la jueza que presidió los procedimientos ese día. Tampoco notificó posteriormente dicha determinación a las partes, según manifestó que haría.

En desacuerdo, el Consejo de Titulares le imputó al TPI la comisión de tres (3) errores.

Se alegó que erró el TPI al denegar la reconsideración radicada. Por un lado, la parte apelante arguyó que la *Sentencia* es inválida y viola su debido proceso de ley. Ello debido a que la misma la priva de su oportunidad de ser oída, considerando que se desestimó la *Demanda* sin haber culminado el juicio, y tras haber resuelto el mismo tribunal, por voz de la Hon. Lynette Ortiz Martínez, que el

---

[30] Íd.
[31] Íd.
[32] Íd.

Consejo de Titulares tiene legitimación activa para presentar el caso y no procede la desestimación. Además, según expuso en su *Apelación*, los remedios solicitados tendrían unos propósitos particulares. La sentencia declaratoria serviría para "que los titulares vivan en convivencia y sin afectar los derechos de los demás", y, mediante el *injunction*, se le ordenaría al apelado a cesar sus "actuaciones contrarias al Régimen y actuar conforme a la sana convivencia del Condominio. . .".[33]

Por otro lado, y como segundo error, la parte apelante alegó que el TPI erró al dictar la *Sentencia* desestimando el caso de marras basado en falta de legitimación activa del Consejo de Titulares en un caso bajo la Ley Núm. 129-2020, *supra*. Adujo que el Artículo 39 (b) de la Ley Núm. 129-2020, Íd., dispone que la "Junta de Directores está expresamente autorizada a presentar acciones interdictales a nombre del Consejo de Titulares contra aquellos que cometan infracciones a las reglas establecidas en esta Ley". Además, la parte apelante aludió al Artículo 48 del referido estatuto, el cual mandata que el Consejo de Titulares constituye la autoridad suprema; y a tenor con el Artículo 49 de la Ley Núm. 129-2020, Íd., el Consejo de Titulares debe "j) [i]ntervenir y tomar decisiones sobre aquellos asuntos de interés general para la comunidad así, como tomar aquellas medidas necesarias y convenientes para el mejor servicio común". Por último, la parte apelante hizo hincapié en la determinación de este foro en el caso de ***Consejo de Titulares v. Juan W. Howe Hernández***, KLAN202100101 donde un panel hermano resolvió que el Consejo de Titulares ostentaba legitimación activa para presentar el caso porque la causa de acción "reside en que sean asuntos que giren en torno al mejor servicio común, problemas comunales, el menoscabo de áreas comunes y medidas

---

[33] Recurso de Apelación, págs. 16-17.

adoptadas para el mejor funcionamiento del condominio y daños al patrimonio del Consejo de Titulares". Íd., pág. 11.

En su último error, la parte apelante argumentó que el foro primario erró al imponerle honorarios de abogados por temeridad por la dilación causada en el caso imputada a la parte apelante. Alegó que el TPI no continuó con la vista comenzada ni escuchó la grabación del juicio y procedió a desestimar la *Demanda*.

Por su parte, en el *Alegato en Oposición*, el apelado reiteró los mismos planteamientos incluidos en su *Solicitud de Desestimación*. Esto es que, la *Demanda* es frívola por carecer de razón legal para incoarla; la *Moción en Solicitud de Reconsideración y en Solicitud de Relevo de Sentencia* incumple con las Reglas 47 y 49 de Procedimiento de Procedimiento Civil, *supra*, R. 47 y R. 49; y el Consejo de Titulares carece de legitimación activa porque: (i) las alegaciones contenidas en esta Demanda están relacionadas a una pugna entre ciertos titulares y terceros ajenos al Condominio Estancias de Aragón; y (ii) el Consejo no ha acreditado que la presentación de esta Demanda ha sido con el aval del Consejo de Titulares mediante acta, según lo exige el artículo 52 de la Ley Núm. 129 de Condominios de Puerto Rico, sobre Acuerdos del Consejo.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica apelativa adjudicativa, resulta forzoso concluir que el TPI incidió en los errores señalados y, por ende, no procede la desestimación del pleito de marras. Lo anterior, pues, la determinación del TPI no encuentra apoyo en el estado de derecho aplicable ni en el expediente del caso de marras.

Como correctamente señala la parte apelante, del Artículo 39 de la Ley Núm. 129-2020, *supra*, sec. 1922k, surge palmariamente la autoridad expresa de la Junta de Directores para presentar reclamaciones de interdictos contra personas que contravienen las disposiciones de este estatuto. En lo que concierne al caso de autos,

una de las razones para justificar la presentación de interdictos a favor de la comunidad de titulares es que, "[n]ingún ocupante del apartamento producirá ruidos o molestias ni ejecutará actos que perturben la tranquilidad de los demás titulares o vecinos". Ley Núm. 129-2020, *supra*, sec. 1922k. Queda claro de la *Demanda* que al menos dos (2) hechos demuestran perturbaciones y molestias del apelado hacia los titulares, como, por ejemplo:

> e. El 7 de agosto de 2020 el Sr. Juan Howe subió a un "chat" fotos del Sr. Lisandro Medina, guardia de seguridad de Estancias de Aragón; del Dr. Sánchez, Tesorero de Estancias de Aragón; del vehículo jeep del Dr. [K]enneth Rivera, titular; del Sr. Roberto Rodríguez, titular y le hace imputaciones en dicho "chat" a la Sra. Sara Cruz, titular, de que esta maltrató a otra titular, lo que no es cierto.

> . . . .

> l. El día 15 de septiembre de 2020 continuó fotografiando vehículos de titulares sin autorización alguna, según Informe de Seguridad de dicho día.[34]

Además, de un pormenorizado estudio de la *Minuta* sobre la vista de *injunction* preliminar se desprende documentación identificada por la parte apelante, durante el directo de la Lcda. Beltrán,[35] la cual provee otros ejemplos preocupantes de perturbación a la tranquilidad; a saber: foto de titulares (identificación 17 marcada como exhibit 12 de la parte demandante);[36] foto de titular (identificación 19 marcada como exhibit 13 de la parte demandante);[37] y foto de titulares (identificación 22 marcada como exhibit 16 de la parte demandante).[38] Como se puede apreciar, el argumento de falta de legitimación activa levantado por el apelado no encuentra apoyo en el derecho ni en los hechos, pues el Artículo 39 de la Ley de Condominios, *supra*, sec. 1922k, provee la autoridad <u>expresa</u> a la

---

[34] Íd., Anejo II, págs. 6, 8.
[35] Íd., Anejo XII, págs. 83-96.
[36] Íd., pág. 87.
[37] Íd.
[38] Íd., pág. 88.

Junta de Directores para presentar interdictos, y más cuando la reclamación de interdicto en el presente caso demuestra la intención de esta de vindicar los derechos de los titulares cónsono con su deber de facilitar la convivencia de toda la comunidad, lo cual constituye su interés legítimo en la presente controversia.

Adviértase que ya el propio Tribunal resolvió que el Consejo de Titulares posee legitimación activa para presentar este caso. Dicha determinación está contenida en la *Minuta* de la vista celebrada el 9 de enero de 2023, más no fue firmada por la jueza que presidió los procedimientos ese día. Tampoco notificó posteriormente dicha determinación a las partes, según manifestó que haría.

En esa misma línea, en ***Consejo de Titulares v. Juan W. Howe Hernández***, KLAN202100101, enfatizamos el criterio para determinar si el Consejo de Titulares ostenta legitimación activa para presentar determinadas causas de acción; a saber: "reside en que sean asuntos que giren en torno al mejor servicio común, problemas comunales, el menoscabo de áreas comunes y medidas adoptadas para el mejor funcionamiento del condominio y daños al patrimonio del Consejo de Titulares". Es evidente que tomar fotografías de titulares y vehículos, así como el interferir indebidamente con titulares y empleados del condominio, afecta el mejor servicio común, y ha causado problemas comunales, tanto así que, durante una asamblea convocada por el Consejo de Titulares, se acordó mediante <u>unanimidad</u> que se le autoriza a la Junta de Directores realizar algún tipo de gestión judicial para conseguir una orden en contra del señor Howe Hernández. Específicamente para el "cese y desista de insultar, fotografiar, confrontar, acosar, verbalmente a titulares, residentes, empleados y personal

voluntariado o con paga y sus pertenencias".[39] Este tipo de gestión, de hecho, se acordó que fuese por la vía judicial. Íd. Por lo tanto, el Consejo de Titulares tiene legitimación activa en el caso de marras.

Ahora, bien, en cuanto al segundo argumento que presenta el apelado de no contar con el aval del Consejo de Titulares y acreditarlo mediante acta, también es improcedente. Nótese que la Ley Núm. 129-2020, *supra*, sec. 1922z, indica expresamente que el(la) Presidente(a) de la Junta de Directores representa al Consejo de Titulares en los foros pertinentes en asuntos que afecten la comunidad. Adviértase, además que, nuestro más alto foro resolvió en ***Consejo Tit. v. Galerías Ponceñas, Inc.***, supra, pág. 332, que el (la) Presidente(a) de la Junta de Directores posee la autoridad para acudir al tribunal en aras de poder asegurar el cumplimiento de la Ley de Condominios o Propiedad Horizontal "**sin necesidad de obtener previamente el aval del Consejo de Titulares**, siempre que la acción esté relacionada con facultades que le fueron expresamente delegadas por la ley". ***D.A.C.O. v. Junta Cond. Sandy Hills***, supra, pág. 595. (Énfasis suplido). En otras palabras, en el presente caso, la Junta de Directores no necesitaba autorización para vindicar los derechos de los titulares. Aun así, el 25 de agosto de 2018, el Consejo de Titulares celebró una Asamblea Ordinaria por la cual aprobaron mediante <u>unanimidad</u> que la Junta de Directores realice alguna gestión judicial para ordenar al señor Howe Hernández a cesar y desistir de "insultar, fotografiar, confrontar y acosar verbalmente a titulares, residentes, empleados y personal voluntariado o con paga y sus pertenencias".[40] Por lo tanto, el argumento de falta de legitimación activa por carecer del aval del Consejo de Titulares tampoco es cónsono con el derecho considerando que la Junta de Directores no lo necesitaba, y aun así,

---

[39] Íd., Anejo II, pág. 23.
[40] Íd., Anejo II, págs. 5, 23.

mediante una asamblea convocada por el propio Consejo de Titulares, se aprobó de forma <u>unánime</u> la presentación del caso de marras.

Además, el TPI erró en resolver, sin fundamento alguno, que "la acción de *injunction* se volvió académica".[41] Si bien uno de las causales o razones para clasificar un caso como injusticiable es la academicidad, a tenor con los autos, parecería ser que la controversia ante nos permanece real y viva. Ello se debe a que el apelado pudiera continuar con la conducta que afecta a los demás, perjudicando así la convivencia de toda una comunidad. Tampoco han surgido hechos judiciales o fácticos que lleven a la determinación de que se tornó académica, al menos nada explica el foro recurrido. Consecuentemente, la reclamación de *injunction* no es académica.

Por último, el TPI le impuso a la parte apelante el pago de costas y gastos de procedimientos, y la suma de $1,000 en concepto de honorario de abogados,[42] pues arguyó que el Consejo de Titulares tuvo el propósito de impedir una resolución rápida del pleito y "del expediente electrónico [surge que], el Tribunal le concedió varias oportunidades al Consejo de Titulares para examinar sus alegaciones y dialogar sobre una posible transacción". Sin embargo, del expediente surge palmariamente una dilación de tres (3) años, a causa de la propia naturaleza del pleito y del accidentado trámite procesal ante el TPI; específicamente, por el conflicto en los calendarios del tribunal y de los abogados litigantes, y <u>cuatro (4) inhibiciones de jueces</u> dentro de un plazo de ocho (8) meses.[43] Por

---

[41] Íd., Anejo XLIII, pág. 188.

[42] Íd., Anejo XLIII, pág. 189.

[43] Íd., Anejo XIII, págs. 97-103 (apelado presenta ***Solicitud de Recusación e Inhibición bajo la Regla 63 de Procedimiento Civil y Solicitud para* Dejar *sin Efecto Señalamiento del 11 de diciembre de 2020***); Íd., Anejo XIV, págs. 104-105 (***Resolución* de inhibición** de la Hon. Itzel Marie Aguilar Pérez; Íd., Anejo XXI, pág. 115 (***Resolución* de inhibición** *motu proprio* del Hon. Hammed Santaella Carlo); Íd., Anejo XXIII, págs. 118-119 (***Resolución* de inhibición** *motu*

lo tanto, la parte apelante no incurrió en temeridad y no procede la imposición de honorarios de abogado.

En vista de nuestra determinación, tampoco procede el pago de costas, el cual se otorga a una parte ganadora; ni el pago de intereses legales. En fin, el TPI erró al imponer el pago de honorarios de abogado, costas e intereses legales.

**V.**

Por los fundamentos que anteceden, se revoca la *Sentencia* apelada. Consecuentemente, se devuelve el caso al TPI para la continuación de los procedimientos; esto es, la continuación del juicio en su fondo conforme con lo aquí resuelto.

Considerando que no existe una sentencia final y firme, se ordena, además que, luego de celebrar el juicio, el TPI realice un balance de intereses entre el derecho de los titulares a disfrutar su propiedad y el derecho a la libertad de expresión del apelado para determinar si procede la concesión de los remedios aquí solicitados por la parte apelante. Solo así haremos cumplida JUSTICIA a las partes.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaría del Tribunal de Apelaciones

---

*proprio* del Hon. Juez Jorge Rafael Rivera Rueda); Íd., Anejo XL, pág.175 (***Resolución* de inhibición** *motu proprio* del Hon. Francisco J. Rosado Colomer).